**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

In re:

ELETSON HOLDINGS, INC., et al.
ELETSON CORP.,

     Debtors.

Civil Action No. 25-CV-6716 (LJL)
Civil Action No. 25-CV-10604 (LJL)

**APPELLANTS' BRIEF IN RESPONSE TO COURT'S ORDER DATED APRIL 29, 2026, <u>REGARDING APPEALS OF BANKRUPTCY COURT RULINGS</u>**

## TABLE OF CONTENTS

INTRODUCTION..................................................................................................................................1

BACKGROUND...................................................................................................................................4

ARGUMENT.......................................................................................................................................7

      A.     Explanatory Circumstances Concerning Timing.........................................................9

      B.     Issues Warrant Determination on the Merits ............................................................ 12

      C.     Appellants Propose Expeditiously Proceeding .......................................................... 13

CONCLUSION................................................................................................................................. 14

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Alexander*,
   677 B.R. 32 (S.D.N.Y. 2026) ............................................................................ 10, 13

*In re Archibald*,
   No. 23-cv-10462, 2024 WL 2093644 (S.D.N.Y. May 9, 2024) ............................ 11

*In re Berlin & Denmar Distribs., Inc.*,
   2014 WL 4354748 (S.D.N.Y. Sept. 2, 2014) ......................................................... 8

*In re Beverely Manuf. Corp.*,
   778 F.2d 666 (11th Cir. 1985) ......................................................................... 8, 10

*In re Geaney*,
   No. 08-CIV-8208 (RJS), 20111 ............................................................................ 11

*In re Great Atl. & Pac. Tea Co., Inc.*,
   618 B.R. 57 (S.D.N.Y. 2020) ................................................................................ 8

*Great Atl. & Pac. Tea Co., Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*,
   850 F. App'x 811 (2d Cir. 2021) .......................................................................... 8

*In re Harris*,
   464 F.3d 263 (2d Cir. 2006) ............................................................................. 8, 9

*In re Hawkins*,
   295 Fed. Appx. 452 (2nd Cir.) ............................................................... 8, 9, 10, 12

*Koch v. Preuss*,
   No. 19-cv-2830 (KMK), 2020 WL 1304084 (S.D.N.Y. Mar. 18, 2020) .............. 11

*In re Tampa Chain Co., Inc.*,
   835 F.2d 54 (2d Cir. 1987) ............................................................................ 8, 11

**Other Authorities**

Bankruptcy Rule 8003(a)(2) .................................................................................... 7

Bankruptcy Rule 8018(a)(1) .................................................................................... 7

Bankruptcy Rule 8018(a)(4) .................................................................................... 8

Appellants Apargo Limited, Fentalon Limited and Desimusco Trading Limited (the "Cypriot Entities")[1] submit this brief in response to the Court's Order dated April 29, 2026 (the "April 29 Order"), which, as filed across different appeals, directed different appellants "to show cause … why the Court should not dismiss the appeal[s] for failure to file any brief" regarding rulings from Bankruptcy Case No. 23-10322 (JPM).

## INTRODUCTION

Appreciating that the April 29 Order expresses the Court's concerns over the timing of the prosecution of a group of appeals filed by multiple parties, the Cypriot Entities respond as to their own two related appeals: (1) 25-cv-6716, which appeals from the Bankruptcy Court's Memorandum Opinion and Order dated August 1, 2025 (BK ECF 1759) (the "August 1 BK Order"),[2] holding that the Cypriot Entities violated the so-called Stay Relief Order (BK ECF 48); and (2) 25-cv-10604, which appeals from the Bankruptcy Court's Memorandum Opinion and Order dated November 19, 2025 (BK ECF 1885) (the "November 19 BK Order"),[3] sanctioning the Cypriot Entities for failing to comply with the August 1 BK Order and imposing monetary penalties. As further addressed below, the time for filing the appeal brief under the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") with respect to the August 1 BK Order remains open pending notice of the record being sent or electronically available. With respect to the follow-on November 19 BK Order, the relevant considerations weigh strongly (if not solely) in favor of the Court exercising its sound discretion under the Bankruptcy Rules to allow the appeal to proceed on the merits in conjunction with the closely related appeal of the August 1 BK Order.

---

[1] In the Bankruptcy Court filings, the Cypriot Entities sometimes are referred to as the "Purported Preferred Nominees".

[2] Notice of Appeal of the August 1 BK Order was timely filed on August 7, 2025 (BK ECF 1767).

[3] Notice of Appeal of the November 19 BK Order was timely filed on December 1, 2025 (BK ECF 1901).

The issues involved in the overlapping appeals arise out of instructions that, back on February 26, 2024, the Cypriot Entities transmitted to Eletson Gas ("Gas") regarding changes to its share registry and board of directors (the "February 2024 Acts").  Ultimately, in the August 1 BK Order, the Bankruptcy Court found that the February 2024 Acts violated the so-called Stay Relief Order dated April 12, 2023 (BK ECF 48).  As much as the Cypriot Entities disagree with the August 1 BK Order, they promptly, in good faith, sought to comply with it by providing written notices of rescission of the February 2024 Acts on August 8, 2026 (the "Original Rescission Notices"), pursuant to the Bankruptcy Court's direction.  However, in its November 19 BK Order, the Bankruptcy Court found that the Original Rescission Notices were inadequate and imposed monetary sanctions.  While they disagree with the November 19 BK Order, the Cypriot Entities promptly thereafter, again in good faith, provided revised notices (the "Revised Rescission Notices") clarifying and amplifying their previously publicly announced rescission of the February 2024 Acts.

At present, the parties have filed competing correspondence with the Bankruptcy Court as to whether the Revised Rescission Notices satisfy the November 19 BK Order.  No ruling on the matter has been made.

Highly cognizant that they have been much criticized – as to which they have a different perspective – for non-compliance with judicial directives (often by affiliation with other parties responsible for the conduct at issue), the Cypriot Entities view these appeals implicating their law compliance as extremely important.  While the prospective appeal brief regarding the August 1 BK Order remains timely, the Cypriot Entities respectfully request relief, which the Bankruptcy Rules expressly allow for, regarding the presumptive date by which to file the brief with respect to the November 19 BK Order.  In response to the Court's inquiry in August 2025 (*E.g.,* 25-cv-

06716 ECF 4) (prior to the November 19 BK Order), the Cypriot Entities stated that they "have no objection to consolidation of arguments among the appeals." *E.g.,* 25-cv-06716 ECF 9.  In hindsight, the Cypriot Entities regret that they did not engage the Court further on case management but proceeded on the view that the larger group of appeals encompassing other parties as well would be subject to further coordination on scheduling.  Further, the dispute over the rescission of the February 2024 Acts continues before the Bankruptcy Court, which, as yet, has not ruled on whether the Revised Rescission Notices are compliant. For efficiency, it has been the Cypriot Entities' further view that any appeals involving the February 20024 Acts and their rescission are best heard in tandem given their overlapping legal and factual issues.

Under the circumstances, good cause exists to allow review of the August 1 BK Order (for which the deadline for a brief is not set) with review of the follow-on November 19 BK Order.  To that end, the Cypriot Entities propose now proceeding expeditiously in either of two ways: (1) they will file a joint brief covering the two pending appeals within five (5) business days of a judicial order approving the schedule (which technically accelerates the timing for the appeal of the August 1 BK Order); or (2) they will file forthwith a formal motion before the Bankruptcy Court for a declaration as to the sufficiency of the Revised Rescission Notices and defer a brief on the two extant appeals pending that outcome before the Bankruptcy Court.

Of great import to the Cypriot Entities, the issues on appeal deserve a hearing on the merits. Particularly given their manifest efforts at compliance with Bankruptcy Court directives through the rescission notices, the Cypriot Entities raise serious, substantive challenges to the rulings subject to appeal.  Nor is there any genuine prejudice to the other parties from an adjudication of the merits, particularly since they never objected to the status or timing of the appeals and they themselves benefit from the efficiencies of treating these related matters collectively.

3

**BACKGROUND**

Claiming interests in the preferred shares of Gas, the Cypriot Entities through the February 2024 Acts made written requests of Gas regarding "changing the share registry to transfer the preferred shares… and replacing Gas's board of directors." August 1 BK Order at 26. Notably, the February 2024 Acts followed shortly after this Court Memorandum Opinion and Order dated February 9, 2024 (the "Arbitration Order"), in the proceeding under the Federal Arbitration Act (23-cv-7331 (LJL)), which at the time confirmed the subject Arbitral Award in substantial part. ECF 83. Given the Arbitration Oder, the Cypriot Entities viewed the February 2024 Acts at the time as appropriate ministerial measures.  Then, almost a year later, Levona filed a motion seeking sanctions against various parties for different conduct, including the Cypriot Entities for alleged violation of the Stay Relief Order based on the February 2024 Acts.  BK ECF 1367. Under the so-called Stay Relief Order, "no Arbitration Party shall transfer, dispose of, transact in … or otherwise use ... [the] Arbitration Award or any asset or property related thereto." BK ECF 48 (¶ 4). Represented by their then-counsel in the Bankruptcy Case, the Cypriot Entities explained their position that, while the Cypriot Entities are not an Arbitration Party, even if they are considered as such, their ministerial acts still were consistent with the Stay Relief Order.  BK ECF 1437.

Almost eight months after the filing of the sanctions motion, the August 1 BK Order found that the February 2024 Acts violated the Stay Relief Order because they "reflect an intention to substantively enforce the Arbitration Award.  BK ECF 1759 at 26.  At risk of monetary sanctions for non-compliance, the August 1 BK Order further provided: "The Cypriot Nominees are ordered within five (5) business days to rescind their changes to the share registry and to the board of directors. *Id*. at 29.

4

While the Cypriot Entities disagree with the Bankruptcy Court's predicate determination that they violated the Stay Relief Order, they faithfully sought (subject to appeal rights) to comply with its directives. Promptly after the August 1 BK Order, on August 8, 2025, the Cypriot Entities transmitted the Original Rescission Notices explicitly revoking the February 2024 Acts.   The Original Rescission Notices are docketed at BK ECF 1851-4, 1851-5.  The notices clearly state that, "[s]ubject to … appeal rights," each of the Cypriot Entities:

- "hereby rescinds in compliance with the [August 1 BK] Order, its requested changes to the share registry as requested on 26 February, 2024"; and

- "hereby rescinds, in compliance with the [August 1 BK] Order, its requested changes to the board of directors of the Company as directed on 26 February, 2024."

In form, the Original Rescission Notices closely mirrored the form of the February 2024 Acts to reinforce their effectiveness.  Plus, the Cypriot Entities publicly announced compliance by letter to the Bankruptcy Court on August 8, 2025 (BK ECF 1771), which ensured that all constituents or interested parties were aware of the compliance measures.

Thereafter, both Reorganized Holdings and Levona joined in another motion for sanctions against the Cypriot Entities on the grounds that the Original Notices did not satisfy the August 1 BK Order. BK ECF 1809.  In opposition (BK ECF 1850 at 1), the Cypriot Entities explained, among other things, that they had:

> "publicly stated – for the avoidance of any doubt anywhere – that the three entities, in compliance with the [August 1 BK] Order, today provided timely notice to Eletson Gas that they rescind the prior instruction covered by the [] Order.  Since then, Movants do not and cannot identify any indica whatsoever that the Cypriot Nominees have exercised in any way board rights or preferred stock ownership rights or acted contrary to their docketed confirmation of compliance."

In its November 19 BK Order (BK ECF 1885 at 13), the Bankruptcy Court ruled against the Cypriot Entities, holding that "compliance has not been effectuated" despite what the Cypriot

Entities understood were the corrective steps that they took.  According to the November 19 BK Order, the "rescission notice … merely states that 'each of the [Cypriot] Nominees rescinds'" but "does not state that any changes have occurred" even though the Cypriot Entities themselves are not legally positioned to make further corporate changes.  *Id*. at 15. Further, the ruling held that the Cypriot Entities did not specifically retract a board act, which again they themselves did not take, "which purported to authorize any action to enforce the arbitration award."  *Id*.

Following the November 19 BK Order, which the Cypriot Entities challenge, they nonetheless dutifully sought to comply with it and transmitted revised notices again rescinding the February 2024 Acts.  Publicly filed with the Bankruptcy Court for all interested parties to read on December 8, 2025 (BK ECF 1915-1, 1915-2), the Revised Rescission Notices "reaffirm[ed] the Original Rescission Notices" and  further "clarifie[d], for the avoidance of doubt" that the changes to the share registry and the appointment of new directors through the February 2024 Acts are "hereby rescinded to restore the status prior to 26 February 2024" (emphasis added).  Further, each of the Cypriot Entities directed, "to the extent of its authority", that the organization and structure of Gas reflect the status prior to the February 2024 Acts.

As a further remedial measure, the Cypriot Entities filed a formal "Secretary's Certificate" from Gas, signed by Laskarina Karastamati, which expressly states that Gas "hereby: rescinds changes to the Company's share registry and restores the status prior to 26 February 2024"; "rescinds the changes to the Company's board appointments … and restores the status prior to 26 February 2024"; and "rescinds the 26 February 2024 unanimous written consent of the board … which authorized any action to enforce the [Arbitration] Award."  BK ECF 1915-3 (emphasis added).

6

Although the Cypriot Entities strongly believe that their corrective actions following the Bankruptcy Court rulings constituted clear, effective rescission and properly resolved the matter, disputes remain.  As reflected in recent correspondence filed with the Bankruptcy Court, Reorganized Holdings still contests whether the Revised Rescission Notices satisfy the November 19 BK Order.  In an undocketed email sent to the Bankruptcy Court on April 17, 2026, Reorganized Holdings sought to increase the monetary sanctions for alleged continued non-compliance. In further correspondence, the parties stated competing positions regarding the status of compliance. BK ECF 1995 (Cypriot Entities' letter dated April 23, 2026, which explains compliance); BK ECF 2001 (Reorganized Holdings' response letter dated April 29, 2026).  There has been no ruling from the Bankruptcy Court on the sufficiency of the Revised Recission Notices.

### **ARGUMENT**

In its April 29 Order, the Court raised the issue of failure to timely file appeal briefs under the Bankruptcy Rules. Bankruptcy Rule 8018(a)(1) provides a presumptive deadline for an appellant to "serve and file a brief within 30 days of docketing of notice that the record has been sent or that it is electronically available."  As the docket for 25-cv-6716 reflects, the 30-day clock for filing did not yet begin with respect to the appeal from the August 1 BK Order as there has been no notice of the record being sent or electronically available.

While an appeal brief with respect to the August 1 BK Order remains timely, a brief was not filed within the 30-day period on the appeal of the related November 19 BK Order. However, Bankruptcy Rule 8003(a)(2) provides that "[a]n appellant's failure to take any step other than the timely filing of a notice of appeal <u>does not affect the validity</u> of the appeal" (emphasis added). Indisputably, the notice of appeal of the November 19 BK Order was timely filed. Under Bankruptcy Rule 8003(a)(2), a missed date for filing the brief is "ground only for the district court

. . . to act as it considers appropriate, including dismissing the appeal." Instead of requiring dismissal, Bankruptcy Rule 8018(a)(4) provides that the district court may allow for "extended time" to file a brief.

As the April 19 Order recognizes, the 30-day window is not jurisdictional and dismissal is not mandatory. *E.g.,* 25-cv-06716 ECF 9 (citing *In re Berlin & Denmar Distribs., Inc.,* 2014 WL 4354748, at *1 (S.D.N.Y. Sept. 2, 2014) (quoting *In re Tampa Chain Co., Inc.,* 835 F.2d 54, 55 (2d Cir. 1987)). According to the Second Circuit: "[t]he time limitations imposed by [the Bankruptcy Rules] are not jurisdictional, and hence the district court is not required ... to dismiss the appeal of a party who has failed to meet those deadlines." *In re Tampa Chain Co.,* 835 F.2d at 55 (citing *In re Beverely Manuf. Corp.*, 778 F.2d 666 (11th Cir. 1985). "Rather, the court should exercise discretion to determine whether dismissal is appropriate in the circumstances[.]" *Id.*

Because "dismissal is a harsh remedy, not to be utilized without a careful weighing of its appropriateness", *Great Atl. & Pac. Tea Co., Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 850 F. App'x 811, 812 (2d Cir. 2021) (summary order) (citation omitted), a court "should determine whether dismissal is appropriate under the circumstances" when considering a party's failure to timely filing its brief. *In re Great Atl. & Pac. Tea Co., Inc.*, 618 B.R. 57, 63 (S.D.N.Y. 2020) (citing *In re Tampa Chain*, 835 F.2d at 55 (citations omitted)), *aff'd sub nom. Great Atl. & Pac. Tea Co., Inc.*, 850 F. App'x 811; *see also In re Hawkins*, 295 Fed. Appx. 452, 453 (2nd Cir.) ("because dismissal is a harsh sanction," courts should consider: "whether counsel's behavior evinces bad faith or a pattern of negligence; whether any parties were prejudiced …; and whether the litigant should be granted the opportunity to rectify the problem.") (quoting *In re Harris*, 464 F.3d 263, 272 (2d Cir. 2006)); *In re Beverely Manuf. Corp.*, 778 F.2d at 667 (in addressing

8

bankruptcy appeals deadlines, "the more flexible standard requiring bad faith, negligence or indifference is appropriate with regard to filing briefs.").[4]

Here, the relevant considerations and circumstances heavily favor allowing the briefing and adjudication on the merits of both related appeals to proceed and not only in connection with the August 1 BK Order.

A.    Explanatory Circumstances Concerning Timing:

For various case management reasons, the Cypriot Entities deferred the briefing on their two related appeals. At a point when only the first of the two appeals was filed, on August 22, 2025, the Court ordered the parties across the multiple appeals from the Bankruptcy Case "to advise how argument may be consolidated to address all related issues in a timely and economical fashion." *E.g.*, 25-cv-06716 ECF 4. In reply, the Cypriot Entities explained that "there is no briefing schedule as of yet" for the appeal from the August 1 BK Order (filed at a time predating the November 19 BK Order). However, the Cypriot Entities stated that "we have no objection to consolidation of arguments among appeals for efficiency." *Id.* at ECF 9. Although Reorganized Holdings wrote that "we do not believe that oral argument will add anything", it agreed that "to the extent the Court determines oral argument would be beneficial, the matters can be fully consolidated." *Id.* at ECF 11. Levona, for its part, noted "nothing is ripe for argument or resolution yet" as "briefing is not yet underway" but did "not believe that it is necessary to schedule ... argument in conjunction with the other appeals." *Id.* at ECF 10. Thereafter, the Cypriot Entities

---

[4] Recognizing the flexibility afforded in assessing whether to grant relief from the briefing deadlines, the Second Circuit has ruled that, as the Court did here, an appellant must receive notice that its failure to comply may lead to dismissal in order to avoid an improvident dismissal. *In re Hawkins*, 295 Fed. Appx. at 453 (quoting *In re Harris*, 464 F.3d 263, 272 (2d Cir. 2006)) ("district courts 'will generally need to provide notice of the potential dismissal and an opportunity for the errant litigant to explain its conduct.'").

are not aware of further communications from any of the parties to the Court regarding the timing and coordination of the appeals.

Given the unresolved determination regarding consolidation and sequencing of the multiple appeals, the Cypriot Entities have not yet filed a merits brief with respect to the August 1 BK Order as the deadline was never triggered.  After filing their notice of appeal regarding the subsequent November 19 BK Order, the Cypriot Entities continued to hold off given the connection between both rulings and appeals.  Reinforcing the obvious linkages, the notice of appeal from the November 19 BK Order refers to the prior rulings (*i.e.*, August 1 BK Order).

As noted, the Cypriot Entities regret not engaging further to advise the Court of their intention to prosecute their appeals and to address timing. They certainly never wanted to leave any misimpression that they abandoned any appeal and did not intend to proceed. Even through to the present, the Cypriot Entities deferred filing a merits brief as related disputes persist before the Bankruptcy Court over the rescission of the February 2024 Acts.  For their part, the Cypriot Entities are of the view that they have fully complied with the Bankruptcy Court's orders.  More recently, however, Reorganized Holdings took a contrary position before the Bankruptcy Court, which led to further correspondence from the Cypriot Entities and then another letter from Reorganized Holdings.  As yet, the Bankruptcy Court has not addressed these filings.

There is no suggestion that the Cypriot Entities have acted in bad faith in any effort at improper delay. *See In re Alexander*, 677 B.R. 32, 43 (S.D.N.Y. 2026) (with regard to accommodating a late filing, the court found "no indication of either bad faith … or prejudice to the Debtor"); *see also In re Hawkins*, 295 Fed. Appx. at 453 (recognizing bad faith as a factor); *In re Beverely Manuf. Corp.*, 778 F.2d at 667 (same).  The reason for deferring a brief was not to

10

diminish the importance of these matters but rather to efficiently account for the connection between the two appeals as well as the ongoing, related activities in the Bankruptcy Court.

This situation is thus readily distinguishable from cases where appeals from bankruptcy rulings were dismissed for failure to file briefs. *In re Tampa Chain Co.*, 835 F.2d at 55 (unlike here, "the district court inquired as to why defendants had filed no brief on the bankruptcy appeal and their attorneys offered no reason or excuse" for a delay of seven months); *In re Archibald*, No. 23-cv-10462, 2024 WL 2093644, at *2 (S.D.N.Y. May 9, 2024) (unlike here, dismissal where Appellant "failed to respond to the Court's April 2, 2024 Order directing that he show cause as to why the appeal should not be dismissed …,which specifically warned that the Court could dismiss the case in the absence of a response"); *Koch v. Preuss*, No. 19-cv-2830 (KMK), 2020 WL 1304084, at *4 (S.D.N.Y. Mar. 18, 2020); (unlike here, dismissal because of "Appellant's repeated delay and failures to proceed" even after "the Court, in its discretion, permitted Appellant a final opportunity to prosecute … again warning him that failure to comply with deadlines would result in dismissal); *In re Geaney*, No. 08-cv-8208 (RJS), 20111 WL 336464, at *1 (S.D.N.Y. Jan. 25, 2011) (unlike here, dismissal for inexcusable indifference only after the "Court warned Appellant that his failure" to file "might result in dismissal" and he had not done so by "two weeks after the deadline set by [the] Court.").

As the Cypriot Entities recognize, they inadvertently erred by not obtaining judicial clearance beforehand for the timing of their briefing on the closely related appeals and an attendant extension as to the November 19 BK Order.  But in the context of multiple, related ongoing appeals and issues, they respectfully submit it was benign and excusable.

11

B.      Issues Warrant Determination on the Merits:

In the "interest of justice," an adjudication of the merits instead of a procedural disposition based on a non-jurisdictional deadline is appropriate in these circumstances. *In re Hawkins*, 295 Fed. Appx. at 454. With respect to the February 2024 Acts and their express, public and repeated rescission through clear notices, the Cypriot Entities are committed by means of the appeals to set the record straight on these important matters.

From the face of both the Original Rescission Notices and the Revised Rescission Notices, compelling grounds exist in favor of the Cypriot Entities' appeals on the merits.  Undeniably, the Cypriot Entities provided a series of express notices directing and then reconfirming the rescission of the February 2024 Acts and restoring the prior status to the fullest extent of their legal authority. Even further, they furnished the Secretary's Certificate from Gas confirming the rescission of the subject acts.  The Cypriot Entities know of no evidence that the directors that they previously appointed, whose designations have been rescinded, have met since then or that any actions have been taken contrary to the rulings at issue.  Simply put, the Cypriot Entities are not aware of any additional steps that they could have taken in further compliance with those rulings. Having rescinded in the same fashion that they requested Gas to act back in February 2024, they have no legal status (and certainly none after their rescission notices) to do more. Any further requirement would be neither feasible nor justified. Indeed, the Cypriot Entities have clearly, repeatedly stated their rescission on the public record.  This is not a situation where they have taken unknown steps; rather, they have made their rescission known in the public domain to all interested parties.

The fact that the Cypriot Entities have not filed a merits brief to date with respect to the November 19 BK Order does not in any way reflect that these issues are not extremely important to them.  To the contrary, the appeals directly concern their law compliance, which, as the Cypriot

12

Entities fully appreciate, has been the subject of pointed (albeit disputed) criticism. It is highly important to them to explain why they understood the February 2024 Acts, in the first instances, were law compliant. At least equally important, the Cypriot Entities want to explain how, after the (contested) finding of violation of the Stay Relief Order, they diligently, responsibly and in good faith implemented measures to the fullest extent of their authority to rescind the conduct that the Bankruptcy Court condemned. Despite those efforts, they now are subject to severe monetary sanctions.

Under the circumstances, the appeals warrant an adjudication on the merits. That is particularly so, since the other parties never raised any concerns of their own regarding the status and timing of the appeals and will suffer no genuine prejudice from a substantive review of the rulings. *See In re Alexander*, 677 B.R. at 43 (circumstances "do not warrant dismissal" where "Debtor has not shown that the brief delay prejudiced her "). Indeed, the approach on timing taken by the Cypriot Entities was sensible to all parties. As Reorganized Holdings continues to contest the effect and sufficiency of the rescission notices before the Bankruptcy Court, it, too, benefits from an efficient adjudication encompassing all of the related issues together. Perhaps recognizing as much, Reorganized Holdings never moved to dismiss for lack of prosecution or otherwise inquired regarding the timing.

C.      Appellants Propose Expeditiously Proceeding:

As they take the issues on these appeals extremely seriously, the Cypriot Entities have no objection to proceeding expeditiously to address the merits. To that end, the Cypriot Entities propose two alternative courses of action: (1) they will file a merits appeal (plus appendix) covering the two related, pending appeals within five (5) business days of a judicial directive to do so; or (2) they will promptly seek to move before the Bankruptcy Court for a declaratory

13

judgment on the compliance of the Revised Rescission Notices under the November 19 BK Order and then consolidate appeal briefing as appropriate in prompt fashion. However the Court determines is the best to way to manage the timing and relationship of the Cypriot Entities' appeals given the related, still-ongoing disputes in the Bankruptcy Court, the Cypriot Entities are amenable given the significance to them of a substantive review of these matters.

## CONCLUSION

Accordingly, the Cypriot Entities respectfully request that the Court refrain from dismissing any of their appeals and allow for a review on the merits of the August 1 BK Order (which remains timely), together with the follow-on November 19 BK Order, as they both relate to overlapping issues regarding the February 2024 Acts and the status of their rescission.

Dated: May 8, 2026                                  By:  */s/ Hal. S. Shaftel*

**GREENBERG TRAURIG, LLP**

Hal S. Shaftel
Adam Kirschbaum
One Vanderbilt Avenue
New York, NY 10017
(212)801-9200
shaftelh@gtlaw.com
kirschbauma@gtlaw.com

*Counsel for Appellants*

14

## CERTIFICATE PURSUANT TO LOCAL RULE 7.1(c)

I, Hal S. Shaftel, certify that the foregoing opposition contains fewer than 8,750 words. According to the word processing program used to prepare this opposition, it contains 4,243 words.

By: */s/ Hal S. Shaftel*_____
Hal S. Shaftel